IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00024
THOMAS ALPERN

                                Plaintiff,

v.

JACQUE BUCHANAN, in his official capacity as
the U.S. Forest Service's Region 2 Acting Regional
Forester, and
UNITED STATES FOREST SERVICE,
                                Defendants.

**COMPLAINT FOR DECLARATORY and INJUNCTIVE RELIEF REVIEWING FINAL AGENCY ACTION**

### I. INTRODUCTION

1. This Complaint presents an as-applied challenge to the user fee program implemented at Maroon Valley in Colorado. The fee program at Maroon Valley allows for the policy and practice of Defendant United States Forest Service (Forest Service) to charge Plaintiff when he enters into the Maroon Valley (an area formally known as the Maroon Bells High Impact Recreation Area (HIRA)) to recreate without using the developed facilities and services of the HIRA. The Federal Lands Recreation Enhancement Act prohibits this practice. Thus, the Court should set aside the part of the fee program that allows such practice and also refund the Plaintiff monies he has paid Defendant Forest Service under the policy.

### JURISDICTION, CAUSE OF ACTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 because it is a federal question.

3. The cause of action for Plaintiff's claims is the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. The challenged final agency

action in this case is the Forest Service decision to charge an amenity fee to visitors to the Maroon Valley even when they use no developed facilities or services. This decision was set forth in the Request for Approval of Recreation Fee Changes from the Colorado Recreation RAC and the issuance of the US Forest Service's Approval of Recreation Fee Change. Ltr. from James S. Bedwell, Designated Federal Officer, Colorado Recreation RAC, to Regional Forester, Region 2, Forest Service, *Request for Approval of Recreation Fee Changes* (June 21, 2013), Ltr. from Daniel J. Jiron, Regional Forester, Rocky Mountain Regional Office, to Forest Supervisor, Rio Grande National Forest, Forest Supervisor, White River National Forest, *Approval of Recreation Fee Changes* (June 26, 2013).

4. Venue is properly vested in this Court pursuant to 28 U.S.C § 1391(e), as the property and events giving rise to this suit occur in this district, and Plaintiff resides within this district as well.

## PARTIES

5. Plaintiff Thomas Alpern is a resident of Colorado and a frequent visitor to the Maroon Valley. He has made many trips to the Maroon Valley and has paid multiple times and under protest to enter Maroon Valley when he uses no facilities or services. He is injured by the challenged policy both monetarily and otherwise: when he does visit, having to pay makes his visits less enjoyable, and having to pay decreases the number of recreational visits he makes to Maroon Valley.

6. Defendant United States Forest Service is a federal government agency within the Department of Agriculture that is responsible for managing the National Forests, and which approved and administers the challenged fee program at Maroon Valley.

7. Defendant Jacque Buchanan is the Acting Regional Forester for Region Two of the United States Forest Service. He is sued in his official capacity.

## FACTS

### The Federal Lands Recreation Enhancement Act (REA) and its Legislative History

8. In 1996, Congress and the President passed legislation as part of a larger appropriations bill to establish the Recreational Fee Demonstration Program (often referred to as "Fee Demo"), which authorized federal land management agencies, including the Forest Service, to collect fees at a limited number of recreational sites. Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, Title I, Sec. 101(c) [title III, Sec. 315], 110 Stat. 1321. Its goal was to "demonstrate the feasibility of user-generated cost recovery for the operation and maintenance of recreation areas or sites and habitat enhancement projects on Federal lands." *Id*. at § 315(a).

9. The response by the public was overwhelmingly negative because agencies such as the Forest Service were charging fees for access to undeveloped public lands. Many state legislatures, counties, and cities passed resolutions opposing the imposition of fees under the Fee Demo program for simple access to public lands on the grounds that such fees erect barriers to low-income citizens, represent double taxation of access to non-developed areas for which additional fees are not appropriate, undermine the democracy and freedom of free recreation on public lands, and represent a commoditization and commercialization of public lands, encouraging a feedback loop for fees and developments (often run by private contractors) on previously undeveloped lands.

10. The Fee Demo program was reauthorized periodically since 1996 in annual appropriations bills. Prior to the final extension of the Fee Demo program in 2003, Representative Peter

DeFazio introduced an amendment in the House Committee on Resources to limit the Fee Demo program to National Parks and eliminate it for Forest Service and other lands. As stated by Representative DeFazio:

> [There are] those of us who feel very strongly that levying these fees indiscriminately across the Forest Service and the BLM [Bureau of Land Management], to nondeveloped areas in particular, is of great concern. Basically, if you want to drive your car around a park and go hunting or go fishing or just walk with the kids or the dog, you have to buy a pass for nondeveloped sites, and a lot of us have strong concerns about that.

2004149 Cong. Rec. H7025-06 at H70333 (2003 WL 21673066) (daily ed. July 7, 2003). In response to Representative DeFazio's concerns, the chairman of the committee, Representative Richard Pombo, who was a general supporter of the Fee Demo program, stated:

> That is something that we are going to change. There is going to be very strict guidelines that come out of an authorization that goes to these agencies so that this does not happen in the future. I will say I oppose doing the amendment at this point in time, but I will tell the gentleman from Oregon (Mr. DEFAZIO) that in the future, if we cannot authorize this program and change the way that it is being run, that I would join him in eliminating the program all together . . ..

*Id.* at H7034

11. Representative DeFazio's amendment did not pass. However, the following year, in light of the continued negative public reaction to the Fee Demo program, Congress refused to reauthorize it and instead passed the Federal Lands Recreation Enhancement Act ("REA"), the statute at issue in this case. 16 U.S.C §§ 6801-6814. The REA states in relevant part:

> *Except as limited by subsection (d) of this Section*, the Secretary may charge a standard amenity recreation fee for Federal recreational lands and waters under the jurisdiction of the Bureau of Land Management, the Bureau of Reclamation, or the Forest Service but only at the following:
> 1) A National Conservation Area;
> 2) A National Volcanic Monument;

3) A destination visitor or interpretive center that provides a broad range of interpretive services, programs, and media;

4) An area-
   a. that provides significant opportunities for outdoor recreation;
   b. that has substantial Federal investments;
   c. where fees can be efficiently collected; and
   d. that contains all the following amenities:
      i. Designated developed parking.
      ii. A permanent toilet facility.
      iii. A permanent trash receptacle.
      iv. Interpretive sign, exhibit, or kiosk.
      v. Picnic tables.
      vi. Security services.

16 U.S.C. § 6802(f) (emphasis added). The subsection (d) limitations on this fee authority referred to in subsection (f) are:

> (d) Limitations on recreation fees
>
> > (1) Prohibition on fees for certain activities or services
> >
> > > *The Secretary shall not charge* any standard amenity recreation fee or expanded amenity recreation fee for Federal recreational lands and waters administered by the Bureau of Land Management, the Forest Service, or the Bureau of Reclamation under this chapter for any of the following:
> > >
> > > (A) *Solely for parking, undesignated parking, or picnicking along roads or trailsides*.
> > > (B) For general access unless specifically authorized under this section.
> > > (C) For dispersed areas with low or no investment unless specifically authorized under this section.
> > > (D) *For persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services.*
> > > (E) *For camping at undeveloped sites that do not provide a minimum number of facilities and services as described in subsection (g)(2)(A) of this section.*

> > (F) For use of overlooks or scenic pullouts.
> > (G) For travel by private, noncommercial vehicle over any national parkway or any road or highway established as part of the Federal-aid System, as defined by section 101 of Title 23, which is commonly used by the public as a means of travel between two places either or both of which are outside any unit or area at which recreation fees are charged under this chapter.
> > (H) For travel by private, noncommercial vehicle, boat, or aircraft over any road or highway, waterway, or airway in any land in which such person has any property right if suck land is within any unit or area at which recreation fees are charged under this chapter.
> > (I) For any person who has a right or access for hunting or fishing privileges under a specific provision of law or treaty.
> > (J) For any persona who is engaged in the conduct of official Federal, State, Tribal or local government business.
> > (K) For special attention or extra services necessary to meet the needs of the disabled.

16 U.S.C. § 6802(d) (emphases added). Thus, while the Forest Service is authorized to charge visitors an "amenity fee" for use of developed facilities and services, it may not simply charge an "entrance fee" to an area when visitors do not use those developed facilities and services. *See also* 16 U.S.C. § 6802(e)(2) ("Prohibited sites- The Secretary shall not charge an entrance fee for Federal recreational lands and waters managed by the Bureau of Land Management, the Bureau of Reclamation, or the Forest Service.").

12. Accordingly, the Forest Service may charge a fee to visitors of an "area" that contains bathrooms, picnic tables and the other developed amenities listed in subsection (f)(4), except that under subsection (d) it may not charge people entering that area to simply travel through it, or who park and hike, backpack, picnic or camp in undeveloped areas, unless those visitors actually use facilities and services as described in 16 U.S.C. § 6802(d)(1)(d). The REA states that only the use of facilities and services may be charged for, not the mere availability of such facilities and services. *Id.* Likewise, the agency may not charge visitors who visit only scenic overlooks or other users listed in subsection (d) such as people on

official government business or member of Indian tribes with tribal hunting rights.

13. As stated in the House committee report authorized by Representative Pombo, the final REA as amended

> . . . clarified where a fee may and may not be charged while also establishing types of fees. *The section was overly prescriptive to alleviate concerns of those who no longer trust certain federal land management agencies with recreation fee authority. For example, the amendment made clear that the USFS and the BLM will not be permitted to charge solely for parking, scenic pullouts and other non-developed areas* while the NPS [National Park Service] and the FWS [U.S. Fish and Wildlife Service] may continue to charge an entrance fee.

H.R. Rep. 108-790(I), 108th Cong., 2nd Sess. 2004 (Nov. 19, 2004), 2004 WL 2920863 at *18 (emphasis added). While Congressional supporters of the predecessor Fee Demo program may have viewed the new REA restrictions as "overly prescriptive," they nonetheless intentionally passed them into law, acknowledging that some members of Congress viewed them as necessary to correct the Forest Service and other agencies' practice under the Fee Demo program of "charg[ing] solely for parking, scenic pullouts, and other non-developed areas." *Id.*

14. In April of 2005, the Forest Service issued the "Interim Implementation Guidelines" to implement the REA on Forest Service lands. They were not subjected to notice and comment, and have never been finalized. *See Id.* The Guidelines created the authority to establish High Impact Recreation Areas ("HIRAs") defined as

> a clearly delineated, contiguous area with specific, tightly defined boundaries and clearly defined access points (such that visitors can easily identify the fee area boundaries on the ground or on a map/sign); that supports or sustains concentrated recreation use; and that provides opportunities for outdoor recreation that are directly associated with a natural or cultural feature, place or activity (i.e. waterway, canyon, travel corridor, geographic attraction- the recreation attraction).

Federal Recreation Enhancement Act Interim Guidelines, April 25, 2005. Washington Office, Forest Service, at 9

15. In February of 2011, the Forest Serviced issued the "Standard Amenity Recreation Fee Area Review" ("Fee Area Review") 6 years after the REA was enacted, to set forth steps and dates the steps should be taken in order to ensure that Forest Service regions were reviewing and revising fee programs administered under the Fee Demo Program. The Fee Area Review also noted that the term "HIRA" created "the impression that the agency has created a new type of fee" and called for the "phasing out" of the use of that term and "simply refer to these areas as 'standard amenity recreation fee areas'." Standard Amenity Recreation Fee Area Review (February 25, 2011).

**The Maroon Bells HIRA**

16. The Forest Service implemented the Maroon Valley Fee Demo Project on July 1, 2000. Under the Fee Demo Project, the Forest Service charged a daily fee to access the Maroon Valley HIRA in the amount of $10 per vehicle. In order to enter the HIRA, a visitor to the area must pass the entrance station where the fee is paid.

17. A mandatory bus system has been in place since 1978. Roaring Fork Transit Authority (RFTA), in conjunction with the Forest Service and Pitkin County, operates a bus program between the hours of 9 a.m. and 5 p.m. to reduce the vehicle traffic within the HIRA. During these hours, the Forest Service staffs a "Welcome Station" seven days a week to stop traffic from using the road when the bus program is in operation and to collect fees. The bus ride begins at the Aspen Highlands Base Area and ends at Maroon Lake Scenic Area.

> Visitors not using the bus are charged a $10 per vehicle standard amenity fee which is good for 5 days. This began in 1997 under the Recreation Fee Demonstration Program (Fee Demo) authority and will continue to apply at the 3 standard amenity fee areas.

Briefing Paper from US Forest Service Recreation, Heritage, and Wilderness Resources,

*Recreation RAC Briefing Paper- Maroon Bells Update* (May 24, 2013). If users wish to access the HIRA outside times the Welcome Station is open, they must pay via a fee tube. Ltr. from Scott G. Fitzwilliams, Forest Supervisor White River National Forest, Forest Service, to Regional Forester, Region 2, Forest Service, *Federal Lands Recreation Enhancement Act (REA)- Status of Standard Amenity Recreation Fee Area Review* (November 6, 2012). The main attraction in the HIRA is the Maroon Lake Scenic area. In addition to Maroon Lake Scenic Area, the East and West Maroon Wilderness Portals are also within the HIRA. The East and West Maroon Wilderness Portals have paved parking lots, toilets, picnic tables, information kiosks, trash service, and security patrols. However, as consistent with their namesake, these areas are mainly used as "portals" for users to access the wilderness just beyond the HIRA.

18. The HIRA fee program, developed initially as a Fee Demo Project, remains in effect today. However, on May 24, 2013, the Forest Service published a Recreation RAC Briefing Paper ("Briefing Paper") that changed the framework of the fee program in an attempt to conform to the REA. Briefing Paper from US Forest Service Recreation, Heritage, and Wilderness Resources, *Recreation RAC Briefing Paper- Maroon Bells Update* (May 24, 2013). Under the Briefing Paper, the Maroon Bells HIRA changed from one large area to "3 stand-alone areas per national direction." *Id*. The 3 stand-alone areas are: East Maroon Wilderness Portal, West Maroon Wilderness Portal, and Maroon Lake Scenic Area facilities at the upper end of the road. In sum, the HIRA was divided into 3 areas, each with their own amenities. The Welcome Station would still charge $10 per visitor. On June 21, 2013, the Colorado Recreation Resource Advisory Committee requested approval of the "fee changes" to the Regional Forester. Ltr. from James S. Bedwell, Designated Federal Officer, Colorado

Recreation RAC, to Regional Forester, Region 2, Forest Service, *Request for Approval of Recreation Fee Changes* (June 21, 2013). On June 26, 2013, the Regional Forester approved the "fee change". Ltr. from Daniel J. Jiron, Regional Forester, Rocky Mountain Regional Office, to Forest Supervisor, Rio Grande National Forest, Forest Supervisor, White River National Forest, *Approval of Recreation Fee Changes* (June 26, 2013).

19. In order to access the Wilderness area beyond the Maroon Bells HIRA, a visitor must pay the $10 standard amenity recreation fee for entering Maroon Valley. The Forest Service may charge the visitors who do not pay this amenity fee with a Class A or B misdemeanor. 16 U.S.C. § 6811(d). If a visitor pays the standard amenity recreation fee to go backpacking in the Wilderness but stays beyond the five days allowance, the Forest Service has the authority to charge the visitor with a Class A or B misdemeanor. 16 U.S.C § 6811(d).

20. Prior to creating the HIRA and the Approval of the 2013 Recreation Fee Changes, the Forest Service charged these access fees for Maroon Valley pursuant to the now-defunct Fee Demo Program. Briefing Paper. To meet the requirements of the REA the 2013 Recreation Fee Changes' only management change was to ask visitors "where they intend to go when passing through the Welcome Station." Ltr. from Scott G. Fitzwilliams, Forest Supervisor White River National Forest, Forest Service, to Regional Forester, Region 2, Forest Service, *Federal Lands Recreation Enhancement Act (REA)- Status of Standard Amenity Recreation Fee Area Review* (November 6, 2012). If someone is "just driving through" the Welcome Station staff ask, "will you be stopping at any of the facilities?" If the visitor says yes, they must pay the $10 fee even if they are parking to access the Wilderness and not utilizing the amenities.

21. While the East and West Wilderness Portals do contain developed amenities, the parking

areas there also provide two designated trailheads that lead into the Maroon Bells Snowmass Wilderness as well as general access to other undeveloped federal land.

22. Plaintiff Alpern enters Maroon Bells to hike, backpack and otherwise recreate in undeveloped portions of the Maroon Bells HIRA without using the developed amenities of the HIRA. Plaintiff Alpern enters the Maroon Valley with his own vehicle before the Welcome Station is open, parks at the East or West Maroon Wilderness Portal and hikes or backpacks into the Wilderness without using amenities at the Wilderness Portals. He has paid under protest to enter the Maroon Valley to engage in these activities.

23. In *Scherer v. U.S. Forest Service*, 653 F.3d 1241, 1244 (10th Cir. 2011), Plaintiff David Scherer and others brought suit to challenge this practice, in what the Tenth Circuit decided was a facial challenge to the practice which, according to the Court, alleged that "*every time*, the Forest Service collects the amenity fee, it exceeds its statutory authority," and so could not succeed since there was no dispute that the Forest Service could charge those who entered the HIRA to use the facilities and service. *Scherer v. U.S. Forest Service*, 653 F.3d 1241, 1244 (10th Cir. 2011) (emphasis in original). However, the Court found that the agency's practice there "may be vulnerable to an *as-applied* challenge" where a plaintiff challenges having to pay "the amenity fee only for picnicking and undesignated parking" and other non-amenity, undeveloped recreation, as those are "activities for which no fee is supposed to be charged under [16 U.S.C.] § 6802(d)(1)." *Id*. at 1243. Plaintiff brings such an as-applied challenge here.

## CLAIM FOR RELIEF

24. The above paragraphs are incorporated here by reference.
25. The Forest Service charges an amenity fee to visitors to the Maroon Valley regardless of

whether the visitors use the developed facilities and services, and the agency has charged Plaintiff this fee when he has entered the Maroon Bells HIRA to engage in recreation without using the developed facilities and services, in violation of the REA, 16 U.S.C. § 6802(d)(1). Accordingly, the Forest Service has taken actions that are arbitrary, capricious, and otherwise not in accordance with law, within the meaning of the Administrative Procedure Act. 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

26. Declare that the policy and practice of the Forest Service at Maroon Bells, specifically charging Plaintiff an amenity fee when he enters the Maroon Bells HIRA and does not use the developed facilities and services of the HIRA, violates the REA;

27. Set aside the policies that give the Forest Service authority to charged an amenity fee to users who do not use the developed facilities and services of the Maroon Bells HIRA;

28. Enjoin the Forest Service from charging an amenity fee to users who do not use the developed facilities and services of the Maroon Bells HIRA.

29. Order the Forest Service to refund the Plaintiff monies he has paid under the policy;

30. Award Plaintiff his costs of litigation, including reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. §2412; and

31. Award such other relief as the Court deems just and proper.

//

Respectfully submitted January 3, 2017.

/s/ *Kristine M. Akland*

Kristine M. Akland
Akland Law Firm, PLLC
PO Box 7274
317 E. Spruce St.
Missoula MT 59807
(406) 544-9863
email: aklandlawfirm@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
PO Box 7051
317 E. Spruce St.
Missoula, MT 59807
(406) 721-1435
email: tim@bechtoldlaw.net

Attorneys for Plaintiff Thomas Alpern