IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00024
THOMAS ALPERN

                                        Plaintiff,

    v.

JACQUE BUCHANAN, in his official capacity as
the U.S. Forest Service's Region 2 Acting Regional
Forester, and
UNITED STATES FOREST SERVICE,
                                        Defendants.

**PLAINTIFF'S MOTION AND BRIEF ON PETITION FOR REVIEW OF AGENCY ACTION**
**(Oral Argument Requested)**

## INTRODUCTION

At issue in this case is the application of a statute that carries criminal penalties for the failure to comply with it. 16 U.S.C. §6811(d). The Federal Lands Recreation Enhancement Act ("REA") prohibits the United States Forest Service from charging fees "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides," for "hiking through . . . without using the facilities and services," and "[f]or camping at undeveloped sites . . ." 16 U.S.C. §6802(d)(1)(A),(D),(E). Defendant United States Forest Service ("Forest Service") is unlawfully demanding fees under threat of criminal enforcement for all drivers who park their vehicle in Maroon Valley, a 5.7 mile-long corridor that traverses public lands with access points to the White River National Forest and Maroon Bells-Snowmass Wilderness. The Forest Service is charging fees in violation of specific prohibitions enumerated in the REA. 16 U.S.C. §6802(d)(1)(A)-(F); 16 U.S.C. §6802(e). Plaintiff requests this Court find that the Forest Service's application of the REA is not in accordance with law and hold the Forest Service may not charge visitors

solely to park and hike or backpack within the Maroon Valley without using amenities. 5 U.S.C. §706(2)(A),(C).

Maroon Valley is a portal for many local hikers and backpackers who wish to access the Maroon Bells-Snowmass Wilderness located within the Valley. The Maroon Creek Road is the only road that runs through the Valley and dead ends at the Maroon Bells Scenic Area. Within Maroon Valley, there are only three possible places to park a vehicle for longer than 15 minutes: Maroon Bells Scenic Area, West Maroon Wilderness Portal and East Maroon Wilderness Portal. The only trailheads in Maroon Valley are located at these three sites. During the hours of 9 a.m. to 5 p.m, visitors must pay $10 to ride a shuttle to enter Maroon Valley.

"Everyone is entitled to enter national forests without paying a cent." *Adams v. USFS*, 671 F.3d 1138, 1140 (9th Cir. 2012) (citing 16 U.S.C. §6902(e)(2) ("the Secretary shall not charge an entrance fee for Federal recreational lands . . .")). The Forest Service may charge a "standard amenity recreation fee" in an "area":

> a. that provides significant opportunities for outdoor recreation;
> b. that has substantial Federal investments;
> c. where fees can be efficiently collected; and
> d. that contains all the following amenities:
>    i. Designated developed parking.
>    ii. A permanent toilet facility.
>    iii. A permanent trash receptacle.
>    iv. Interpretive sign, exhibit, or kiosk.
>    v. Picnic tables.
>    vi. Security services.

16 U.S.C. §6802(f)(4).

However, the REA prohibits the Forest Service from charging that fee even in a place where subsection (f) would otherwise authorize it. This blanket "prohibition on fees for certain activities or services" forbids fees:

> (A) *Solely for parking, undesignated parking, or picnicking along roads or trailsides*.

- (B) *For general access unless specifically authorized under this section.*
- (C) For dispersed areas with low or no investment unless specifically authorized under this section.
- (D) *For persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services.*
- (E) *For camping at undeveloped sites that do not provide a minimum number of facilities and services as described in subsection (g)(2)(A) of this section.*
- (F) For use of overlooks or scenic pullouts.
- (G) For travel by private, noncommercial vehicle over any national parkway or any road or highway established as part of the Federal-aid System, as defined by section 101 of Title 23, which is commonly used by the public as a means of travel between two places either or both of which are outside any unit or area at which recreation fees are charged under this chapter.
- (H) For travel by private, noncommercial vehicle, boat, or aircraft over any road or highway, waterway, or airway in any land in which such person has any property right if suck land is within any unit or area at which recreation fees are charged under this chapter.
- (I) For any person who has a right or access for hunting or fishing privileges under a specific provision of law or treaty.
- (J) For any persona who is engaged in the conduct of official Federal, State, Tribal or local government business.
- (K) For special attention or extra services necessary to meet the needs of the disabled.

16 U.S.C. §6802(d)(1) (emphases added).

Prior to enacting the REA, Congress conducted a decade-long experiment with collecting visitor fees at national forests. The "Fee Demo Program" selected Maroon Valley as a site where the Forest Service "shall charge and collect fees for the admission to the area." Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, tit. III, § 315(b)(1)(1996). Under the Fee Demo Program, Maroon Valley constructed a Welcome Station and began to charge visitors a $10 fee to enter the Maroon Valley. After the REA was enacted, the fee structure at Maroon Valley remained essentially identical to the one under the Fee Demo Program except that visitors who "drive through" or use a pull out for less than 15 minutes are not charged a fee.

The plain language of the REA and its legislative history show that the statute was enacted to

correct the practice of charging fees to access undeveloped federal lands. Under the REA, while the Forest Service is authorized to charge visitors an "amenity fee" for use of developed facilities and services, it may not simply charge an "entrance fee" to an area when visitors do not use those developed facilities and services and enter that area to simply travel through it, or park and hike, backpack, picnic or camp in undeveloped areas. The REA states that only the use of facilities and services may be charged for, not the mere availability of such facilities and services.

In practice, every user is charged $10 to enter Maroon Valley regardless of whether he wishes to use the amenities at the three sites or merely park to hike. This is because the only available parking areas to access the trailheads also have all six amenities under 16 U.S.C. §6802(f)(4)(D). However, the many local visitors who wish to enter the Maroon Valley do so solely to hike into the Wilderness and not to use any of the amenities. But because the Forest Service charges visitors who park at the three sites or requires them to pay for a shuttle from 9 a.m. to 5 p.m., hiking visitors are charged just to access undeveloped federal land. This is the precise situation that the REA plainly does not allow. This Court should find the Forest Service is in violation of the REA.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A. The Federal Lands Recreation Enhancement Act (REA) and its Legislative History**

1. In 1996, Congress and the President passed legislation as part of a larger appropriations bill to establish the Recreational Fee Demonstration Program (often referred to as "Fee Demo"), which authorized federal land management agencies, including the Forest Service, to collect fees at a limited number of recreational sites. M0037-M0047.

2. The goal was to "demonstrate the feasibility of user-generated cost recovery for the operation and maintenance of recreation areas or sites and habitat enhancement projects on Federal lands." M0046.

3. Pursuant to this authority, the Forest Service began to charge fees for access to the Maroon Valley on the White River National Forest in Colorado. M0048-M0049.

4. In 2004, Congress did not reauthorize the Fee Demo program but instead passed the Federal Lands Recreation Enhancement Act ("REA"), the statute at issue here. M0195

5. In April of 2005, the Forest Service issued the "Interim Implementation Guidelines" to implement the REA on Forest Service lands. M0192-M0224

6. The Guidelines were not subjected to notice and comment, and have never been finalized. M0192-M0224.

7. The Guidelines created the authority to establish High Impact Recreation Areas ("HIRAs") defined as

> a clearly delineated, contiguous area with specific, tightly defined boundaries and clearly defined access points (such that visitors can easily identify the fee area boundaries on the ground or on a map/sign); that supports or sustains concentrated recreation use; and that provides opportunities for outdoor recreation that are directly associated with a natural or cultural feature, place or activity (i.e. waterway, canyon, travel corridor, geographic attraction- the recreation attraction).

M0200

8. In February of 2011, the Forest Serviced issued the "Standard Amenity Recreation Fee Area Review" ("Fee Area Review") 6 years after the REA was enacted, to set forth steps and dates the steps should be taken in order to ensure that Forest Service regions were reviewing and revising fee programs administered under the Fee Demo Program. M0264

9. The Fee Area Review also noted that the term "HIRA" created "the impression that the agency has created a new type of fee" and called for the "phasing out" of the use of that term and "simply refer to these areas as 'standard amenity recreation fee areas.'" M0264

10. The Maroon Valley is located just outside of Aspen, Colorado. M0053.

11. In Maroon Valley, visitors can view the Maroon Bells (peaks) and Maroon Lake, one of the most

photographed landscapes in the National Forest system. M0053.

12. Maroon Valley is also "an entryway into the Maroon Bells-Snowmass Wilderness that invites sightseers, day hikers, backpackers and mountaineers." M0053

13. The Maroon Valley is a destination or portal for many hikers and backpackers. M0054.

14. Other than three campgrounds located near the mouth of the valley, Maroon Valley consists solely of three "standard amenity fee sites" and pull outs along a 5.7 mile road corridor on National Forest System land. M0270

15. The three sites are Maroon Lake Scenic Area, West Maroon Wilderness Portal, and East Maroon Wilderness Portal. M0270

16. Maroon Creek Road is only one road in and out of Maroon Valley and the only way to access these sites. M0269, M0410.

17. "Parking is very restricted anywhere other than in the designated parking in these three sites due to narrow road and limited shoulder width . . ." M0269

18. Roadside parking has been restricted in the Maroon Valley since 1978. M0270

19. The main tourist attraction in the Maroon Valley is the Maroon Lake Scenic area which contains a major developed parking lot, bus staging parking, restroom facilities, picnic tables, grills, information center, amphitheater, trash facilities and security patrols. M0270.

20. The Maroon Lake Scenic area, or the "Day Use" area, also serves as a trailhead for West Maroon Trail. M0056, M0417.

21. Recreation opportunities at the Maroon Lake Scenic area include hiking, picnicking and viewing scenery. M0291.

22. The East and West Maroon Wilderness Portals have paved parking lots, toilets, picnic tables, information kiosks, trash service, and security patrols. M0270.

23. The East and West Maroon Wilderness Portals serve as an entrance into the Maroon Bells-Snowmass Wilderness and as a trailhead for the West Maroon Trail. M0056, M0417.

24. Recreation Opportunities at the West Maroon Wilderness Portal and East Maroon Wilderness Portal include hiking, picnicking, and viewing scenery. M0281, M0285.

25. Stein Meadow View Pullout provides four additional parking spots. No facilities are at this location and there is no access to trails from this point. M0270.

26. The Stein Meadow View Pullout is a "designated short term 15 minute parking". M0273.

27. Since 1977, Roaring Fork Transit Authority (RFTA), in conjunction with the Forest Service and Pitkin County, operates a bus program between the hours of 9 a.m. and 4:30 p.m. to reduce the vehicle traffic within the HIRA. M0052

28. In July 1 2000, the Forest Service implemented the Maroon Valley Fee Demo Project. M0095.

29. A permanent "Welcome Station" was built at the entrance of Maroon Valley to control access to Maroon Valley when the bus is in operation and to collect fees. M0055, M0390

30. Under the Fee Demo Project, the Forest Service charged a $10 daily fee per vehicle to access the Maroon Valley. M0064.

31. The Fee Demo Project was in effect until May 24, 2013, when the Forest Service published a Recreation RAC Briefing Paper ("Briefing Paper") that changed the framework of the fee program. M0270.

32. The Forest Service reduced Maroon Valley from one large fee area to three standard amenity fee areas: East Maroon Wilderness Portal, West Maroon Wilderness Portal and Maroon Lake Scenic Area. M0299.

33. Under the REA, visitors not using the bus are still charged $10 per vehicle at the Welcome Station. M0270.

34. Fees continue to be collected at the Welcome Station by staff when the Welcome Station is open or by fee tube when the Welcome Station is not staffed. M0269.

35. "Because there is only one vehicle entry into the larger area and parking is not currently allowed anywhere other than in designated parking in [the] three sites, the fees will continue to be collected at the Welcome Station." M0267

36. Visitors who intend only to use the short term 15 minute parking at the Stein Meadow View Pullout are not required to pay a fee. M0273.

37. The only place to park longer than 15 minutes within Maroon Valley is at one of the three standard amenity sites. M0267.

38. In a letter to the Regional Forester dated November 6, 2012, Forest Supervisor Scott G. Fitzwilliams stated "the following changes were made to the Maroon Bells Recreation Area at the beginning of summer 2012 and/or will be implemented prior to the 2013 season . . . [At the Welcome Station] visitors are asked where they intend to go when passing through the Welcome Station, if someone is 'just driving through' they are asked, "will you be stopping at any of the facilities?" If the answer is no then no fee is charged. M0269

39. According to the Briefing Paper, only visitors who indicate that they intend only to visit Stein Meadow will not be charged for their visit. M0270.

40. If visitors do not pay the fee, they are either ticketed or their vehicle is left with a note stating that they must pay the $10.00 fee and failure to do so "may subject you to criminal enforcement under 16 U.S.C. 6811 and 36 CRF 261.17." M0376

41. "[O]nly visitors who park at one of the three standard amenity fee sites and fail to pay the standard amenity fee, or stay beyond the five day allowance, are subject to pay under 36 C.F.R § 261.17 or 16 U.S.C. § 551. Answer (ECF 6) at ¶19.

## STANDING

Plaintiff Thomas Alpern enters Maroon Bells to hike, backpack and otherwise recreate in undeveloped portions of Maroon Valley without using the developed amenities within Maroon Valley. Alpern Dec. ¶4. Plaintiff Alpern enters the Maroon Valley with his own vehicle before the Welcome Station is open, parks at the Maroon Lake Scenic Area, East Maroon Wilderness Portal or West Maroon Wilderness Portal and hikes or backpacks into the Wilderness without using amenities at the Wilderness Portals. *Id*. ¶7, 8, 10. He has paid under protest to enter the Maroon Valley to engage in these activities. *Id*. ¶27.

Mr. Alpern has standing because he frequently visits Maroon bells and has paid fees under protest to access Maroon Valley without using the facilities and services. *Scherer v. U.S. Forest Service*, 653 F.3d 1241, 1243 (10th Cir. 2011) citing *Schutz v. Thorn*, 415 F.3d 11128, 1133 (10th Cir. 2005) ("[p]aying a fee under protest itself can sometimes be enough to confer standing to challenge its collection.")

## ARGUMENT

### I. STANDARD OF REVIEW

This case is brought pursuant to the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706. Under the APA, the reviewing court "shall hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." 5 U.S.C. §706(A).

In evaluating an agency's interpretation of a governing statute, the court conducts the *Chevron* two-step inquiry. *Chevron U.S.A. Inc., v. Natural Resource Defense Council, Inc*., 467 U.S. 837, 843 (1984). First, the court asks "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If so, the Court must give effect to that plain intent without affording any deference to a contrary agency interpretation. *Id.* at 843. "[A]s the Supreme Court indicated in *Chevron* and has reiterated since then, the reviewing court must 'employ[] traditional tools of statutory construction' – including, when appropriate,

legislative history—to determine whether Congress 'has an intention on the precise question at issue.'" *Ohio v. U.S. Dep't of Interior*, 880 F.2d 432, 441 (D.C. Cir. 1989)(citations omitted). However, if the text is ambiguous, the court proceeds to step two and considers whether the agency's interpretation was "a reasonable policy choice for the agency to make." *Id*. at 845. The court then employs various levels of deference to agency interpretations. But only consistent interpretations arrived at through "a formal adjudication or notice-and-comment rulemaking," untainted by other factors such as pecuniary bias or a lack of deliberation on the relevant statutory issue, "warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)

## II. CHARGING FEES FOR PARKING AND UNDEVELOPED RECREATION IN MAROON VALLEY VIOLATES THE REA

The plain language of the REA prevents the Forest Service from charging fee for "general access" and to visitors who solely park, picnic, hike, or camp in undeveloped areas. The Forest Service at Maroon Valley does exactly that: charges a fee to visitors, such as Plaintiff, who do not use the amenities but solely park and hike or backpack in Maroon Valley and adjacent federal lands. This is a violation of the REA. However, even if this Court concludes the language of the REA is not plain, the Forest Service's application of the REA, which, in practice, requires all visitors to pay a fee for accessing the Maroon Valley even without use of amenities, cannot be accepted because minimal deference is owed to the Forest Service's here.

### A. The plain language of the REA contradicts the Forest Service's application at Maroon Valley

"'Shall' means shall" when interpreting a Congressional command, and speaks of no discretion to ignore it. *Forest Guardians v. Babbitt*, 174 F.3d 1178 1187 (10th Cir. 1999). The REA states that the Forest Service may charge fees for an area that contains all of the several enumerated developed amenities, "[e]xcept as limited by subsection (d) . . ." 16 U.S.C. §6802(f). Subsection (d) states that the Forest Service "shall not charge" "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides," or

"[f]or general access unless *specifically authorized* under this section" or "[f]or camping at undeveloped sites that do not provide a minimum number of facilities and services . . ." 16 U.S.C. §6802(d)(1) (emphasis added). It is plain from the statute that the Forest Service cannot charge visitors who enter Maroon Bells for: parking, picnicking on trails and along the road, or for visitors who want to access the Maroon Bells-Snowmass Wilderness.

The legislative history confirms the plain meaning of subsection (d). The committee chair who was previously supportive of the Fee Demo program stated in the House Report that REA, "made clear that the [Forest Service] will not be permitted to charge solely for parking, scenic pullouts, and other non-developed areas . . . " H.R. Rep. 108-790(I), 108th Cong. 2nd Sess. 2004 (Nov. 19, 2004), 2004 WL 2920863 at *18.

Prior to the final extension of the Fee Demo program in 2003, Representative Peter DeFazio introduced an amendment in the House Committee on Resources to limit the Fee Demo program to National Parks and eliminate it for Forest Service and other lands. As stated by Representative DeFazio:

> [There are] those of us who feel very strongly that levying these fees indiscriminately across the Forest Service and the BLM [Bureau of Land Management], to nondeveloped areas in particular, is of great concern. Basically, if you want to drive your car around a park and go hunting or go fishing or just walk with the kids or the dog, you have to buy a pass for nondeveloped sites, and a lot of us have strong concerns about that.

2004149 Cong. Rec. H7025-06 at H70333 (2003 WL 21673066 at **24) (daily ed. July 7, 2003).

In response to Representative DeFazio's concerns, the chairman of the committee Representative Richard Pombo, who was a general supporter of the Fee Demo program, stated:

> That is something that we are going to change. There is going to be very strict guidelines that come out of an authorization that goes to these agencies so that this does not happen in the future. I will say I oppose doing the amendment at this point in time, but I will tell the gentleman from Oregon (Mr. DEFAZIO) that in the future, if we cannot authorize this program and change the way that it is being run, that I would join him in eliminating the program all together . . . .

*Id.* at **27

Representative DeFazio's amendment did not pass. However, the following year, in light of the continued negative public reaction to the Fee Demo program, Congress refused to reauthorize it and instead passed the REA.

As stated in the House Committee Report authorized by Representative Pombo, the final REA as amended

> . . . clarified where a fee may and may not be charged while also establishing types of fees. *The section was overly prescriptive to alleviate concerns of those who no longer trust certain federal land management agencies with recreation fee authority. For example, the amendment made clear that the USFS and the BLM will not be permitted to charge solely for parking, scenic pullouts and other non-developed areas* while the NPS [National Park Service] and the FWS [U.S. Fish and Wildlife Service] may continue to charge an entrance fee.

H.R. Rep. 108-790(I), 108th Cong., 2nd Sess. 2004 (Nov. 19, 2004), 2004 WL 2920863 at *14 (emphasis added).

While Congressional supporters of the predecessor Fee Demo program may have viewed the new REA restrictions as "overly prescriptive," they nonetheless intentionally passed them into law, acknowledging them as necessary to correct the Forest Service and other agencies' practice of "charg[ing] solely for parking, scenic pullouts, and other non-developed areas" under the Fee Demo Program. *Id.*

The statutory language is "completely clear with regard to the extent of the authority conferred to charge a citizen a recreational amenity fee." *United States v. Smith*, 2010 WL 3724756 (D. Ariz. 2010). The Forest Service is prohibited from charging an amenity fee "[s]olely for parking" and "general access." 16 U.S.C. §6802(d)(1)(A). "There is nothing ambiguous about [this] text. If all a visitor does is park, and he is charged a fee, that fee is imposed '[s]olely for parking'." *Adams* 671 F.3d at 1143. "A standard amenity recreation fee is not, like expanded fees, for the *use* of certain amenities . . . Subsection (d)(1) is a freestanding prohibition on collecting . . . fees 'for' a list of eleven activities . . . the statute is abundantly clear that a standard amenity recreation fee cannot, under any circumstances, be charged for those activities." *Id.* (emphasis in original).

In *Smith*, the Court found that "the [REA] statutory language is completely clear with regard to the

extent of the authority conferred to charge a citizen a recreational amenity fee. Congress expressed a manifest intent into [REA] that a fee not be charged solely to park on the National Forest." 2010 WL 3724756 at *9.

> The [REA] is an extremely comprehensive and precise statutory scheme clearly delineating specific instances in which the public may be charged an amenity fee for use of the National Forests, and other public lands, and quite plainly prohibiting the agency from establishing any system which requires the public to pay for parking or simple access to trails.

*Id*.

> It is apparent that Mr. Smith would not have received a ticket had he not parked a vehicle, i.e., had a friend delivered him to the trailhead and retrieved him the following day. Accordingly, what Mr. Smith received was actually a ticket for parking, clearly prohibited by the plain language of the statute.

*Id*. at *10.

In *Adams*, the Forest Service, pursuant to the Fee Demo Program charged fees to all drivers who entered Mount Lemmon on the Coronado National Forest and parked their cars to hike or camp in and on undeveloped areas. 671 F.3d at 114. There is only one paved road to the summit of Mount Lemmon, the 28-mile Catalina Highway. *Id*. After the enactment of the REA, the fee structure at Mount Lemmon "remained essentially identical to the one under the [Fee Demo] Program with one concession to the REA: an exemption for visitors who drive through without stopping (except at pullouts and overlooks)." *Id*. at 1141-1142. The Ninth Circuit found that the REA prohibition on charging a fee "solely for parking" was unambiguous and "clearly contemplates that individuals can go to a place offering facilities and services without using the facilities and services and without paying a fee." *Id*. at 1144. The court held that the Forest Service was not entitled to deference and violated REA by charging fees to all visitors even if they only wish to park and hike without using facilities and services. *Id*. at 1144, 1145.

Parking and picnicking are activities for which no fee is supposed to be charged under § 6802(d)(1). *Scherer v. USFS*, 653 F.3d 1241, 1243 (10th Cir. 2011). In *Scherer*, the Forest Service placed

an entrance station at the only access to Mount Evans in Colorado and charged a fee to all drivers who entered even if they only wanted to park and hike. *Id.* at 1242. The plaintiff claimed that the Forest Service's REA Implementation Plan exceeded the statutory authority by charging people who seek only to hike or camp at undeveloped sites and asked the Court to find the fee policy as facially inconsistent. *Id*. at 1243. The Tenth Circuit held that it could not do so. However, it found:

> *[S]ome* lawful applications of the policy do exists. But saying this much shouldn't be misconstrued as saying more. In rejecting the plaintiff's facial challenge we hardly mean to suggest that the Service's policy can't be attacked at all. It might well be susceptible to a winning challenge *as applied* to certain particular visitors, perhaps even the plaintiffs themselves.

*Id*. at 1242. The plaintiffs then brought an "as applied" challenge to the Mount Evans REA Implementation Plan in this Court. See *Scherer v. USFS,* 1:11-cv-03267-JLK (D. Colo. 2011).The case was settled before the issue could proceed to summary judgment briefing. *Id.*

Despite the clear prohibition against charging a fee solely for general access or to park and hike, the Forest Service here does exactly that in Maroon Valley, and is thus in violation of the REA. Just as in *Adams*, the fee structure at Maroon Valley remains essentially identical to the one under the Fee Demo Program, with one concession: an exemption for visitors who drive through without stopping (except at the Stein Meadow Pullout). The three standard amenity fee sites provide the only parking *and* access to the Maroon Bells Snowmass Wilderness Trails from Maroon Valley. M0417. The only option that visitors have to use the undeveloped federal recreation land is to park at one of the three standard amenity fee sites.

Just as suggested by now-Justice Gorsuch in *Scherer*, Plaintiff here brings an as-applied challenge to the Forest Service's implementation of the REA at Maroon Valley. *Scherer*, 653 F.3d at 1242. Here, the Forest Service admits that visitors who park at one of the three fee areas and do not pay the fee are ticketed. Answer (ECF 6) at ¶19. However, parking at anywhere other than the three standard fee sites is not allowed. M0267, M0269. The Stein Meadow Pullout only provides 15 minute parking for four cars and no access points to trails exist there. M0273 M0270. If a visitor, such as Plaintiff, wishes only to use

the trailheads in Maroon Valley to hike, backpack or camp in the undeveloped Federal recreation land beyond the fee areas, she must park at one of the fee areas and must pay to park or risk receiving a citation.

The map below shows the Maroon Bells Snowmass Wilderness Trails' (brown line) only trailheads (blue "TH") are located at the three standard amenity fee sites: East Maroon Wilderness Portal, West Maroon Wilderness Portal and Maroon Lake Scenic Area. The Maroon Creek Road runs along Maroon Creek and is the only access the three trailheads.



Wilderness Trailhead Map M0417

The facts here are similar to *Adams*. The Forest Service is, in practice, charging fees to all drivers

who park their cars in the Maroon Valley even if those drivers do not use the facilities and services and only wish to use the trailhead at one of the three standard amenity fee sites. Visitors, such as Plaintiff, who wish only to access the Wilderness beyond the amenities, must still pay a user fee to do so. Similarly, as in *Smith*, it is clear that visitors, such as Plaintiff, would not receive a ticket if he "had a friend deliver him to the trailhead and retrieve him the following day." Accordingly, receiving a ticket for parking is "clearly prohibited by the plain language of the statute. *Smith*, 2010 WL 3724756 at *10.

While the Forest Service admits that "only visitors who park at one of the three standard amenity fee sites and fail to pay the standard amenity fee, or stay beyond the five day allowance, are subject to pay under 36 C.F.R §261.17 or 16 U.S.C. §551," Answer (ECF 6) at ¶19, it also admits that it may not charge an "entrance fee" to an area when visitors do not "stop" at developed facilities and services. *See* Complaint (ECF 1) ¶11, Answer (ECF) ¶11. In fact, the Forest Service exempts such users from paying fees in the Maroon Valley and users who are accessing Maroon Bells from outside Maroon Valley and those who do not "intend to stop" at the three standard amenity fee sites, or only intend to stop at the Stein Meadow 15-minute pull out. M0273. Yet, the Forest Service charges users, such as Plaintiff, who drive into the Maroon Valley and park and hike, backpack, picnic or camp in undeveloped areas accessible only via the three standard amenity fee sites.

The plain language of the REA, confirmed by the legislative history, clearly indicates that the Forest Service may not charge fees for parking and picnicking, hiking or camping in undeveloped areas in the Maroon Valley.

**B. Even if the meaning of the REA was not clear, the Forest Service's application cannot be accepted.**

In the event that this Court does proceed to Step Two of *Chevron*, full deference should not be given to the Forest Service because its application is: 1) inconsistent with Congressional intent; and 2) self-serving and has a pecuniary interest in this particular application. *Amalgamated Sugar Co. LLC v. Vilsak,*

563 F.3d 822, 834 (9th Cir. 2009)(*citing, inter alia, Chevron*, 467 U.S. at 843 n.9).

First, the REA was enacted to correct the practice of charging fees to access undeveloped federal lands under the Fee Demo Program. The legislative history, as more fully set forth above, shows that Congress made the REA "overly prescriptive" to "[make] clear that the USFS. . . will not be permitted to charge solely for parking, scenic pullouts, and other non-developed areas. . . ." H.R. Rep. 108-790(I), 108th Cong. 2ND Sess. 2004 (Nov. 19, 2004), 2004 WL 2920863 at *18. As stated in *Smith*,

> [A]lthough Congress did not specifically limit the geographic size of an "area" in the [REA], elsewhere in the same section of the legislation Congress expressed an intent to prohibit the Forest Service from charging citizens solely for parking at undeveloped parking sites or for casual use of remote sites, such as dispersed camping or hiking. Congress indicated an intent to not charge citizens an amenity fee for use of sites where six specific amenities were not provided. By prohibiting the Forest Service from charging the public simply for access and parking, and stating that the Forest Service could only charge an amenity fee at "areas" with amenities, Congress clearly intended to exclude from the definition of an "area" a place without amenities where the result would be that the public would be charged solely to park or for general access or undeveloped camping.

2010 WL 3724756 at *12.

Representative DeFazio's proposed amendment to limit the Fee Demo Program and his concerns about levying "fees indiscriminately across the Forest service and BLM, to nondeveloped areas" was acknowledged by the committee chairman, Representative Pombo. In response Rep. Pombo stated that the practice of charging people to park and hike in undeveloped areas, "is something that we are going to change." 2004149 Cong. Rec. H7025-06 at H7034 (2003 WL 21673066 at **27). Rep. Pombo also said that he would vote to eliminate the Fee Demo Program if a change to that aspect could not be authorized. *Id.* The following year, Congress refused to reauthorize the Fee Demo Program and instead passed the REA. Thus, the Forest Service's practice at Maroon Valley is not in line with how Congress intended the Forest Service to apply the REA: The Forest Service's practice at Maroon Valley is the precise practice that Congress intended to eliminate through the enactment of the REA.

By requiring a fee to park at every access point and trailhead in the Maroon Valley, the Forest

Service has pigeon-holed every person who wishes to enter Maroon Valley into paying a fee. This application of the REA furthers the Forest Service's financial interest and thus this Court must subject it to greater scrutiny to ensure it is consistent with Congressional intent. *Id*.

### III. THE FOREST SERVICE CANNOT DEMONSTRATE THAT ALL SIX AMENITIES EXIST AT WEST MAROON WILDERNESS PORTAL AND EAST MAROON WILDERNESS PORTAL.

The REA allows the Forest Service to charge a fee for an area that contains all the following amenities: Designated developed parking, a permanent toilet facility, permanent trash receptacle, interpretive sign, exhibit, or kiosk, picnic tables and security services. 16 U.S.C. §6802(d)(1). The Forest Service cannot demonstrate that "security services" exist at the West and East Maroon Wilderness Portals.

While extremely meager, the five physical amenities required to charge an amenity fee exist at the Portals (see M0278, M0280, M0282, M0284, M0403), "security services" do not exist. Alpern Dec. ¶6. Rangers are not stationed at the Portals and do not drive by on a regular basis through out the day. There is no evidence of cameras or other security devices located at the Portals. Thus, The Forest Service cannot charge a fee for using the West and East Maroon Wilderness Portals.

### CONCLUSION AND REQUESTED RELIEF

For the reasons as set forth above, this Court should hold that the Forest Service policy and practice to charge Plaintiff when he enters into Maroon Valley to hike, backpack, camp at undeveloped facilities and otherwise recreate in undeveloped federal lands is a violation of the REA. This Court should enjoin the Forest Service from charging an amenity fee to users who do not use the developed facilities and services in Maroon Valley, find that the East and West Maroon Wilderness Portals are not standard amenity fee sites and order the Forest Service to refund Plaintiff monies he has paid under the policy.

Plaintiff Alliance for the Wild Rockies requests oral argument on this matter.

//

Respectfully submitted August 21, 2017.

/s/ *Kristine M. Akland*

Kristine M. Akland
Akland Law Firm, PLLC
PO Box 7274
317 E. Spruce St.
Missoula MT 59807
(406) 544-9863
email: aklandlawfirm@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
PO Box 7051
317 E. Spruce St.
Missoula, MT 59807
(406) 721-1435
email: tim@bechtoldlaw.net

Attorneys for Plaintiff Thomas Alpern